UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
UNITED STATES OF AMERICA,          :

               Plaintiff,          :

                     :          13 Cr. 282 (VM)

   - against -          :

                     :          DECISION AND ORDER

STEFAN BUCK,          :

                     :

          Defendant.          :
------------------------------X

**VICTOR MARRERO, United States District Judge.**

By motion filed on November 18, 2014 ("the Motion"), defendant Stefan Buck ("Buck") requested the Court to schedule a hearing to consider his application for bail. The Government responded by memorandum in opposition dated December 3, 2014 ("the Opposition"). For the reasons stated below, Buck's motion is DENIED.

## I.  BACKGROUND

On April 16, 2013, Buck and a co-defendant, Edgar Paltzer ("Paltzer"), were charged in a one-count indictment with conspiring with certain United States taxpayers ("U.S. Taxpayers") to defraud the Internal Revenue Service in regard to taxes owed by such Taxpayers, in violation of Title 26, United States Code, Sections 7201 and 7206, and Title 18, United States Code, Section 371.

Buck worked at a Swiss Bank and, beginning in 2007, allegedly helped U.S. Taxpayers open and maintain undeclared

accounts, and allegedly helped them access their undeclared funds in a manner designed to evade detection. The indictment further alleged that during the course of the conspiracy, Buck traveled to the United States and met with U.S. Taxpayers in Manhattan.

Buck is a resident of Switzerland, and because of the policies of the Swiss Government against extradition based on tax-related offenses, he has not been arrested nor extradited for the charge in this matter. Buck learned of the indictment, at the latest, in May of 2013, when his United States counsel contacted the Government. Buck has remained in Switzerland since that time.

Buck's Motion seeks a bail hearing prior to his making any personal appearance in this Court. Morever, the Motion asks "that reasonable conditions be set in his absence, so that [Buck] can travel to New York, appear in this Court, and agree to return to this Court when required to do so." (Motion 5-6.) Buck also proposes a bail package he considers reasonable. (See id. 6-7.)

The Government's Opposition argues that the Court should deny the Motion because Buck is a fugitive and the fugitive disentitlement doctrine applies to bar the relief Buck requests. (See Opposition 5-13.) Further, the Government contends that the

-2-

plain meaning of Title 18, United States Code, Section 3142, requires that a defendant appear in court before bail can be decided. (See id. 13-15.)

## II.   DISCUSSION

A.   BUCK IS A FUGITIVE

A defendant who knowingly fails to appear for an arraignment is a fugitive. See United States v. $45,940, 739 F.2d 792, 796 (2d Cir. 1984). It is unnecessary for a court to find that a defendant physically fled to decide he is a fugitive. Rather, as the Second Circuit explained in United States v. Catino, 735 F.2d 718 (2d Cir. 1984), "the intent to flee" can be inferred when a person "fail[s] to surrender to authorities once he learns that charges against him are pending." Id. at 722. A defendant is a fugitive if he physically exits the jurisdiction with the purpose of avoiding prosecution, or if, "having learned of [the] charges while legally outside the jurisdiction, 'constructively flees' by deciding not to return." Id.

Buck's claim that prior decisions in this district require a defendant's actual flight for him to be classified a fugitive is incorrect. (See Motion 7-8.) In United States v. Schreiber, 535 F. Supp. 1359 (S.D.N.Y. 1982), the court held that the defendant became a fugitive "when he knew that he was under

-3-

indictment and made no effort to return to this country to face the charges" and that "the intent necessary to render absence [into] flight may be found when one already outside the country declines to return." Id. at 1363. So, while Buck accurately states that intent to flee is a requirement, the law as explained by the Second Circuit in Catino and by this district in Schreiber is that "the intent necessary" exists where "one already outside the country declines to return" after learning of the charges. Schreiber, 535 F. Supp. at 1363; see Catino, 735 F.2d at 722.

Buck also cites a Southern District of Florida case, United States v. Ogiermann, et. al, 10 Cr. 80157 (S.D. Fl. Jan. 26, 2011), as an example of a similarly situated defendant whose request for a bail hearing prior to a personal appearance was granted. (See Motion 10.) As the Government points out, however, Ogiermann does not even address the question of fugitive disentitlement and has never been cited in another judicial opinion. (Opposition 7.) Further, the definition of a fugitive and the application of the fugitive disentitlement doctrine are well developed in the Second Circuit. These are not questions for which this Court need look elsewhere for guidance, and as such the Court will rely solely on Second Circuit law. The concept of "constructive flight" has been clearly adopted in the

Second Circuit and applies where a defendant evades prosecution by remaining outside of the Court's jurisdiction after learning of the charges against him.

Buck learned of the indictment against him no later than May 2013. He has remained in Switzerland since that time and "made no effort to return to this country to face the charges." Schreiber, 535 F. Supp. at 1363. He therefore falls squarely within the definition of constructive flight as stated in Catino and Schreiber. Hence, he is a fugitive.

B.   THE FUGITIVE DISENTITLEMENT DOCTRINE APPLIES

Having found that Buck is a fugitive, the Court must determine whether to apply the fugitive disentitlement doctrine. This doctrine serves to prevent a fugitive from pursuing actions that may benefit him while at the same time evading actions that might sanction him in the same court. See United States v. Eng, 951 F.2d 461, 464-65 (2d Cir. 1991), abrogated on other grounds by Degen v. United States, 517 U.S. 820 (1996). As the Second Circuit has declared, there is "no reason to entertain the cause of one who will respond to a judgment only if it is favorable [to him]." Empire Blue Cross & Blue Shield v. Finkelstein, 111 F.3d 278, 282 (2d Cir. 1997). The doctrine has four purposes: "1) assuring the enforceability of any decision that may be rendered against the fugitive; 2) imposing a penalty for

flouting the judicial process; 3) discouraging flights from justice and promoting the efficient operation of the courts; and 4) avoiding prejudice to the other side caused by the defendant's escape." United States v. Morgan, 254 F.3d 424, 426 (2d. Cir. 2001). As discussed below, the purposes of the fugitive disentitlement doctrine support applying it to Buck in this case.

First, were the Court to consider the merits of Buck's bail application, it would be unable to assure the enforceability of its ruling. Presumably if the Court denied Buck's application, Buck would stay in Switzerland. Otherwise, if he intended to appear regardless of the Court's decision on the merits of his bail application, he could simply appear for the bail hearing itself; nothing is barring him from doing so. Buck's strategy to seek a bail hearing without showing up personally in court suggests that he will not appear if his bail application on the terms he dictated is denied. In the event the Court ruled against Buck in the bail hearing and Buck were to remain in Switzerland, the Court would have no ability to enforce its decision.

The second purpose of the fugitive disentitlement doctrine -- imposing a penalty for flouting the judicial process -- also favors applying it to Buck. For more than 18 months, Buck has

-6-

known about the indictment against him, and yet has chosen to remain in Switzerland, suggesting his intent to stay there unless he receives bail conditions he finds acceptable. This position constitutes a clear flouting of the Court's authority. Buck is not entitled to receive any potentially favorable rulings from this Court if he is unwilling to stand for and face the consequences of any potentially unfavorable rulings.

The third policy objective of the fugitive disentitlement doctrine -- discouraging flights from justice -- also militates in favor of denial of the Motion. Should the Court grant Buck's request and bail application on its merits, its ruling would be tantamount to signaling to future defendants that their best strategy would be to flee prosecution and deliver bail demands from a non-extradition country. Such defendants could then elect, based on what bail conditions were offered, whether or not to return to the United States. This choice is not an incentive a court would want to offer defendants. It would also create a perverse invitation for the Court itself. Under these circumstances, courts -- knowing that the defendant would return only if he received a favorable bail package, perhaps on terms and conditions more advantageous to the defendant than otherwise warranted -- might be inclined to accede to the defendant's demands as a means of inducing them to court. Such a course

-7-

would encourage defendants to flee, thus compromising judicial authority. Therefore, the third policy objective also counsels in favor of applying the doctrine to Buck.

Lastly, the doctrine's fourth policy objective -- avoiding prejudice to the other parties caused by the defendant's escape -- clearly favors applying the doctrine to Buck. The Government suffers significant prejudice as a result of Buck's constructive flight, including but not limited to its inability to prosecute a major case and facing the potentially major expense and delay associated with seeking extradition, both adverse consequences directly caused by Buck's constructive flight.

With all four purposes of the fugitive disentitlement doctrine strongly supporting application in this case, the Court finds that the doctrine applies. On this basis the Court concludes that the Motion should be denied.

C.    THE BAIL STATUTE SHOWS APPEARANCE MUST PRECEDE BAIL

The bail statute itself also counsels against granting the Motion. Title 18, United States Code, Section 3142(a) states: "Upon the appearance before a judicial officer of a person charged with an offense, the judicial officer shall issue an order that, pending trial, the person be [detained or released]." Id. Regarding the timing of such a proceeding, "[t]he hearing shall be held immediately upon the person's first

-8-

appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance." 18 U.S.C. § 3142(f).

The plain and unambiguous language of this statute instructs that a defendant must appear in court before the judicial officer decides whether to grant bail. This reading makes intuitive sense. The Court should not reach a determination on bail until the defendant has appeared, in part to strengthen the Court's ability to enforce its decision. Otherwise, as is the case with the detrimental outcomes the fugitive disentitlement doctrine seeks to prevent, two equally unacceptable results might ensue: either the Court could end up issuing an order it cannot enforce, or the defendant would be empowered to choose whether to subject himself to the Court's jurisdiction.

### III. ORDER

For the reasons discussed above, it is hereby

**ORDERED** that the Motion of defendant Stefan Buck for a bail hearing (Dkt. No. 26), is **DENIED**.

**SO ORDERED.**

Dated:     New York, New York
           9 January 2015

                                          Victor Marrero
                                          U.S.D.J.

-9-